IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AL DUNN,

               Plaintiff

       vs.                                  Case No. 16-4164-SAC

TIM MORSE, in His Individual
Capacity and in His Capacity
as Sheriff of Jackson County,

               Defendant.

MEMORANDUM AND ORDER

      This civil rights action alleges claims under the First Amendment (speech and association) and Fourteenth Amendment (procedural due process) based on the plaintiff Al Dunn's termination in July of 2016 from his position as detective with the Jackson County Sheriff's Department. With 2016 being an election year for the defendant Sheriff Tim Morse, Dunn alleges the defendant Morse violated Dunn's constitutional rights in terminating him for reasons related to the election. Morse moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dk. 7). The motion has been fully briefed and is ready for decision.

**Standards Governing Motion**

      "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)," *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000), and the

same standards govern motions under either rule, *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). On either motion, the court considers only the contents of the complaint. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). The court accepts as true "all well-pleaded factual allegations in a complaint and view[s] these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). This duty to accept a complaint's allegations as true is tempered by the principle that "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting in part *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)).

To withstand a Rule 12(b)(6) motion, "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Al–Owhali v. Holder*, 687 F.3d 1236, 1239 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Iqbal*, 556 U.S. at 678 (quoting

Twombly, 550 U.S. at 556). It follows then that if the "complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* "'A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012).

"Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming*, 656 F.3d at 1214. The Tenth Circuit regards the *Twombly–Iqbal* decisions as crafting a new "refined standard" whereby "plausibility refers to 'the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting in turn *Twombly*, 550 U.S. at 570). "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)).

### Claims and Allegations

The plaintiff alleges his termination was unlawful being in violation of his rights to freedom of speech and freedom of association under the First Amendment and his right to procedural due process under the Fourteenth Amendment. The following are the relevant factual allegations gleaned from the plaintiff's complaint.

Hired in 2000, promoted to Detective in 2004, and then promoted to Chief Detective in 2007, Al Dunn worked for Jackson County Sheriff's Department. He worked under the defendant Sheriff Morse from June 2011, until Morse terminated Dunn on July 12, 2016, on the stated grounds of insubordination. In May of 2016, Dunn began investigating a local young man on multiple allegations of sexual assaults with multiple victims. Dunn carried out his investigatory duties, "by interviewing witnesses, speaking with officials, and speaking with defendant Morse." (Dk. 1, ¶ 11). Dunn alleges that because of this "speech related to the investigations," family members and friends of the young male suspect began complaining to Morse and using the pending political campaign to influence Morse to stop the investigation. *Id.* at ¶ 12. The complaint alleges Morse yielded to this pressure from the suspect's family and friends in that he then "pressured plaintiff to back off of his investigation, stop his speech related to the investigation, and to become associated with his political need to appease family/friends of the suspect." *Id.* at ¶ 13. According to the

complaint, "[a]s a result of plaintiff's speech related to the investigation, and as a result of his failure to associate with Morse's political needs, in spite of official pressure by defendant Morse that he do so," the plaintiff was suspended on June 24, 2016, pending an investigation into alleged insubordination, and then was terminated on July 12, 2016, for alleged insubordination. *Id.* at ¶¶ 14 and 15.

The court notes other significant allegations in the complaint. First, as to the First Amendment claims, "Plaintiff believes and expressly alleges that his speech related to the investigation of  . . . [the suspect] was on matters of public concern, and thus protected." (Dk. 1, ¶ 22). Second, as to the due process claim, "Plaintiff believes and expressly alleges that he was entitled to due process before being terminated from his position; and that even though he was suspended allegedly pending an investigation, in fact no investigation was done; he was informed of no investigation; he was not asked to participate into any investigation; and he was thus terminated without due process." (Dk. 1, ¶ 27). Finally, the "Plaintiff believes and expressly alleges that his right to speech; the fact that his speech was on matters of public concern; his right to not associate with defendant Morse's political needs; and his right to due process before being terminated; were all clearly established at the time of his suspension and termination." *Id.* at ¶ 28.

Because the defendant asserts qualified immunity, the burden is with the plaintiff to show he has alleged both that the defendant violated a constitutional right and that this constitutional right was clearly established in the law at the time of the violation. *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009). The qualified immunity inquiry is made "in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks and citations omitted). "[A] right is clearly established only if there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." *Id.* The following findings and conclusions demonstrate the plaintiff has failed to carry his burden in both regards.

### First Amendment—Freedom of Speech

Morse seeks judgment because Dunn's alleged speech is not constitutionally protected for the following argued reasons. Dunn was not speaking as a citizen on a matter of public concern, but as a detective and public employee in the performance of his official duties. The complaint alleges speech only related to the investigation, as in interviewing witnesses, speaking with officials, and speaking with Sheriff Morse. Dunn's speech was a part of his duties and responsibilities as a detective in the sheriff's department. Consequently, Dunn's speech activities were simply a function of his official job responsibilities.

In his brief, Dunn repeats his allegation that he was terminated, "because he would not shirk his duty to investigate an alleged serial sex offender, because the family of the alleged serial sex offender was making political noise in the election year." (Dk. 13, p. 6). Dunn stands on his allegations that he engaged in protected activity by speaking with officials and Morse on matters related to the investigation and these matters were of public concern. Dunn argues his allegation of "speech related to the investigation" is not the same as "speech of the investigation itself," and he maintains the former is constitutionally protected. Dunn asks for discovery to "be conducted on the details of the events, from which the Court can then determine as a matter of law whether the speech is protected." (Dk. 13, p. 13). Dunn then presumes for the court's consideration:

> So, for instance, if discovery shows that when it was time to interview a victim at one point, and at the last minute defendant directed a less experienced detective to do the interview, telling plaintiff to stay behind for a routine task with an applicant, when plaintiff told the defendant the routine task was completed so he could still attend the victim interview: the defendant became angry. Of if discovery shows that on another occasion when defendant learned plaintiff was going to conduct a search of the suspect's mother's property, he responded with angry words to plaintiff about the impact of the search on the suspect's mother. Or when plaintiff spoke with the department's Victim Services Coordinator about how victims were being treated, defendant criticized the Victim Services Coordinator for her and plaintiff speaking about victim treatment, thus thwarting further speech between her and plaintiff. And so forth. With an evidentiary record on such facts, the Court can determine if plaintiff's speech was official duty or beyond his official duty and on issues of public concern, and thus protected speech.

(Dk. 13, pp. 13-14). None of these presumed scenarios are alleged in the complaint. Relying on *Lane v. Franks*, ---U.S.---, 134 S.Ct. 2369 (2014), Dunn argues his speech related to the investigation may be still protected if it was not within the scope of his ordinary duties or not commissioned by his employer. Dunn asks the court to consider his speech protected, because:

> He was *not* paid to make the elected Sheriff refrain from interfering with or thwarting investigations. He was *not* paid to take extraordinary steps and engage in additional speech to try to protect victims and public from a politically-motivated interference with an investigation. The speech for which plaintiff claims protection here; the speech which angered defendant and caused him to terminate plaintiff; the speech that was of critical interest to the public and its interests; was the speech that defendant characterized as refusing to "back off" on the investigation. That is the protected public interest speech plaintiff has alleged was the motivation for his termination. Discovery should be permitted to flesh out the details of that speech; . . . . The efficient running of the agency was imperiled by defendant's actions, not plaintiff's speech. Plaintiff's speech was designed to support the efficient running of the agency.

(Dk. 13, pp. 15-16). In refusing or opposing the Sheriff's orders for him, Dunn says his speech is outside his job duties, because the Sheriff's orders were politically motivated.

The Tenth Circuit recently summarized the law governing a claim like the plaintiff's:

> A public employer may not "discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin* [*v. McPherson*], 483 U.S. [378] at 383, 107 S.Ct. 2891 [(1987)]; *see also Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "Speech by citizens on matters of public concern lies at the heart of the First Amendment," and "public employees do not renounce their citizenship when they accept employment." *Lane v. Franks*, ––– U.S. ––––, 134 S.Ct. 2369, 2377, 189 L.Ed.2d 312 (2014). Therefore, the Supreme Court "has

cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights." Id.

Nevertheless, a public employer must be able to control the operations of its workplace. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Lytle* [*v. City of Haysville*], 138 F.3d [857] at 863 [(10th Cir. 1998)]. "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Thus, "the First Amendment protection of a public employee's speech depends on a careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Lane*, 134 S.Ct. at 2374 (quoting *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731).

The familiar *Garcetti/Pickering* test governs our review of Helget's First Amendment retaliation claims. The test consists of five steps:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)). The first three steps concern questions of law for the courts, and the last two concern questions of fact. *Id*.

*Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221-22 (10th Cir. 2017).

The issue here is whether the plaintiff Dunn's complaint contains enough allegations of fact, taken as true, as to state a claim, plausible on its face, on the first element of the *Garcetti/Pickering* test that is a question of law.

On the first element, the Tenth Circuit takes a practical case-by case approach "looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough v. University of Colorado Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010). As to the content of the speech, the Tenth Circuit has focused the inquiry in this way:

> *Garcetti* holds that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. The official-duties question is a practical one that turns on "whether the speech was commissioned by the employer," *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008) (internal quotation marks omitted), and "reasonably contributes to or facilitates the employee's performance of the official duty," *id.* at 1324 (internal quotation marks omitted); *see Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007) (speech activities not protected because they "stemmed from and were the type of activities that [the employee] was paid to do").

*Seifert v. Unified Govt. of Wyandotte County/Kansas City*, 779 F.3d 1141, 1151 (10th Cir. 2015). If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech "'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'" *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202–03 (10th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 422). "[S]peech pursuant to the employee's duty to report a particular activity is usually within that employee's official duties under *Garcetti/Pickering*." *Rohrbough*, 596 F.3d at 747 (citation omitted). As

to the chosen audience, the courts look at where the speech occurred and whether it was addressed within a chain of command. *Id*. Thus, "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties." *Id*. To be protected, Dunn's alleged speech must not be part of what he was employed to do, must not be done pursuant to his official duties, and must not be the type of expected activity which he was being paid to do.

Dunn's complaint alleges only these details about his official duties. He is the Chief Detective to the Sheriff's department which was managed by the defendant Morse. His duties included investigating allegations by victims, "interviewing witnesses, speaking with officials, and speaking with defendant Morse." (Dk. 1, ¶ 11). The complaint expressly alleges that Dunn's "speech was on matters of public concern," but it is silent on whether his speech was not made pursuant to or part of his official duties. The complaint, however, offers no more than a conclusory allegation on the content being a matter of public concern. Indeed, the specifics of what the plaintiff alleges as speech are omitted from the complaint. The governing standards direct that the court should disregard these conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable. As suggested in his opposing response (Dk. 13), the gist of the plaintiff's allegedly protected speech is all that he said and did with Morse to oppose

his directions, orders, and conversations made in an effort to thwart the investigation. The specific content of this speech is nowhere alleged in the complaint and, therefore, does not plausibly suggest liability.

What is alleged as to the general content of Dunn's alleged speech and as to the particular audience of it exclusively points to the speech being part of Dunn's official duties as the Chief Investigator. There are no specific facts alleged to support a different conclusion. Thus, the plaintiff's general allegation that his speech is protected is not the type of well-pleaded allegation that must be accepted as true when ruling on a motion for judgment on the pleadings. By itself, the plaintiff's failure to allege the scope of his job duties and how his speech was outside his official duties are serious pleading deficiencies.  Even without knowing all of the plaintiff's job duties, it is apparent that the allegedly protected speech to Morse, "characterized as refusing to 'back off' on the investigation," all occurred within the chain of command and was made in opposition to instructions and orders from his sheriff who was supervising and monitoring the plaintiff's performance of his official duties. (Dk. 13, p. 15). The plaintiff's opposition, even if on a matter of public concern, directly related to the performance of his official duties, both in content and audience, and it does not constitute protected speech under *Garcetti*. *Rohrbough*, 596 F.3d at 747; *see Cory v. City of Basehor*, 631 Fed. Appx. 526 (10th Cir. 2015) (Police officer's complaints about the department's safety policies and

practices and reports of violations of the same "did not merely 'concern' his duties, but were made 'within the scope' of his duties as a police officer"); *Myers v. County of Somerset*, 293 Fed. Appx. 915, 917–18 (3d Cir. 2008) (unpublished) (Detective sergeant's comments protesting the validity of an investigation and asserting the police chiefs' hypocrisy in supporting a prosecutors' efforts for renomination were not protected as all were made within the chain-of-command or to the co-lead investigator and, therefore, were spoken pursuant to the detective's employment duties). By all indications, Dunn intended his speech to reasonably contribute to or facilitate his performance of official duties. *Brammer-Hoelter*, 492 F.3d at 1203. Put another way, Dunn's speech was related to alleged "wrongdoing directly impacting . . . [his] ability to carry out . . . [his] official duties." *Joyce v. North Metro Task Force*, 2011 WL 2669162 at * (D. Colo. Jul. 7, 2011) (Detectives' speech was made for the purpose of furthering the agency's work); *see Cheek v. City of Edwardsville, Kan.*, 514 F. Supp. 2d 1220, 1231 (D. Kan. 2007) (Police Majors' speech to Attorney General office about Police Chief's misconduct "reasonably contributed to and facilitated their performance of their duties to investigate criminal conduct and conduct IA investigations."), *aff'd*, 324 Fed. Appx. 699 (10th Cir. 2008), *cert. denied*, 558 U.S. 816 (2009). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the

13

exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 421–22. The court finds that the defendant is entitled to judgment on this freedom of speech claim as the plaintiff was speaking as part of his official duties and not as a citizen speaking on matters of public concern.

### First Amendment—Freedom of Association

The defendant argues the plaintiff in this claim simply repackages the unsuccessful freedom of speech claim. The plaintiff's only substantive allegations on this association claim are:

> 13. As a result of the pressure from family/friends, defendant Morse pressured plaintiff to back off of his investigation, stop his speech related to the investigation, and to become associated with his political need to appease family/friends of the suspect . . . .
> . . . .
> 19. Plaintiff believes and expressly alleges that his failure to affiliate with defendant Morse's political needs was the substantial or motivating factor behind his suspension and termination.
> . . . .
> 21. Plaintiff believes and expressly alleges, given the nature of his duties and the management style of defendant Morse that his lack of support of defendant Morse's political campaign was not a valid grounds for his suspension or termination, and that his position did not demand political loyalty. Plaintiff's political affiliation with defendant Morse, and specifically his political campaign strategy of accommodating the complaints and pressures of family/friends of . . . [the suspect], was not necessary for the effective performance of plaintiff's duties.

(Dk. 1, pp. 3-4). The defendant argues the complaint fails to allege protected conduct, but only seeks to transform an everyday employment dispute into an untenable constitutional claim.

In responding, the plaintiff argues the above allegations are enough in that he refused to associate or affiliate himself with Morse's political needs and was terminated for doing so. The plaintiff interprets Morse's supervision of him regarding the investigation to be the same as "becom[ing] associated with the political need to appease family/friends of the suspect." (Dk. 1, ¶ 13). In his response, the plaintiff more clearly reveals his position, "Demanding that plaintiff support his campaign by a different means—not rigorously conducting an investigation; or not pressing defendant to stop thwarting the investigation and questioning his reaction to political pressure—also violated plaintiff's rights." (Dk. 13, p. 9). In short, the plaintiff is alleging his "political allegiance" was implicated in the way he handled or supported an investigation being conducted in the exercise of his official duties as an investigator and in the way he responded to his supervisor's orders regarding the same investigation.

"Although the *Garcetti/Pickering* analysis applies to an association based retaliation claim, a plaintiff need only satisfy the first, fourth, and fifth prongs of the test." *Denton v. Yancey*, 661 Fed. Appx. 933, 938 (10th Cir. Oct. 3, 2016) (citing *See Shrum v. City of Coweta*, 449 F.3d 1132, 1138-39 (10th Cir. 2006)("holding that a court should not require a showing of 'public concern' or engage in judicial balancing of the employer's interest against the employee's interest when the public employee alleges retaliation for participation in a union with which his employer has signed a

collective bargaining agreement"). As Morse argues, the finding of no protected speech on the first prong applies with equal force here, as the plaintiff has not alleged any protected activity in what he characterizes as a refusal to associate or affiliate. In all respects, Dunn has only alleged that he refused to conduct his official investigator duties in the manner requested by his supervising Sheriff. The court agrees with the defendant's position and grants his motion for judgment on the pleadings here. The plaintiff's allegations show only that his refusal to support or associate with the defendant were exclusively actions taken as part of his official duties and were not the actions of a citizen acting on matters of public concern. The plaintiff has not alleged a plausible claim for relief.

## 14th Amendment—Procedural Due Process

Morse seeks judgment on the pleadings as the plaintiff's complaint fails to allege a protected property interest to which due process would apply. There is nothing offered that recognizes or that creates a cognizable interest. Morse points to a sheriff's statutory authority to hire and dismiss all who serve at the sheriff's pleasure which makes Dunn an "at-will employee" and precludes his due process claim. "Kansas courts have been quite clear that at-will employees lack a property interest in their position." *Robert v. Bd. of County Com'rs, Brown Cty., Kans.*, 691 F.3d 1211, 1220 (10th Cir. 2012). Moreover, in Kansas, "public employment is presumptively at-will," and "[t]o override this presumption, a written contract must

expressly fix the duration of employment or otherwise limit the employer's ability to discharge." *Id.* (citations omitted).

Dunn alleges a protected due process right arising from his suspension pending an "investigation." He contends this gave him a right to an investigation which was violated when he was later terminated without one. Dunn asks for discovery on this issue. He further asserts that he has handled personnel matters while working at the sheriff's department and that investigations, as a practice, have included interviewing the accused employee. Dunn specifically alleges his due process claim arises from not being interviewed before his termination.

The Due Process Clause of the Fourteenth Amendment requires "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks and citations omitted). The plaintiff's constitutional claim depends on him "having a property right in continued employment." *Id.* at 538. The plaintiff Dunn has not carried his burden of alleging anything in state law that gives rise to an arguable property interest in his continued employment. He has not rebutted the Kansas presumption of at-will employment with any viable or plausible allegations. He has not alleged an "entitlement to a substantive right or benefit" supported by "rules or mutually explicit understandings" and "not simply a unilateral expectation." *Robbins v. U.S.*

17

*Bureau of Land Management*, 438 F.3d 1074, 1085 (10th Cir. 2006) (internal quotation marks and citations omitted). Finally, the plaintiff's arguments go no further than to claim some expectation in a procedure or process rather than in a protectable property interest. The law is clear in that regards:

> This court has explained "it is well established that an entitlement to nothing but procedure cannot be the basis for a property interest." *Robbins*, 438 F.3d at 1085 (quotation omitted). This is because "[p]rocess is not an end in itself," but instead serves only "to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Although detailed and extensive procedural requirements may be relevant as to whether a separate substantive property interest exists, *see Hennigh* [*v. City of Shawnee*], 155 F.3d [1249]at 1254 [(10th Cir. 1998)], the procedures cannot themselves constitute the property interest. Here, Plaintiffs' claimed entitlement to be considered for promotion in accordance with the state system of merit is no more than a claim of entitlement to a fair process. Even assuming state law grants every state employee the right to be fairly considered for promotion, this right is not itself a substantive right, but rather a vehicle for arriving at the ultimate promotion decision.  Where state law is not sufficiently restrictive to create a property interest in the underlying decision, there can be no property interest in the procedure used to make that decision.

*Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007) (footnote omitted). The plaintiff Dunn has not alleged any state law involved in his expectation of interest. Moreover, what he has alleged is no more than a unilateral expectation in a process or procedure used during an investigation following his suspension. The plaintiff has not alleged anything in state law or in recognized policies that so restrict these "investigation" processes as to

arguably give rise to a property interest in the underlying decision to terminate. The defendant is entitled to judgment on the pleadings.

### Official Capacity Action

The plaintiff's complaint names Morse as a defendant in both his individual and official capacity. Finding no viable constitutional claims to have been alleged, the court grants the defendant's motion seeking judgment for both capacities. Additionally, Morse argues for Eleventh Amendment immunity on the official capacity claims, and the plaintiff does not respond to his argument. The court grants the same as uncontested.

IT IS THEREFORE ORDERED that the defendant Morse's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Dk. 7) is granted.

Dated this 31st day of March, 2017, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge